IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| J.L., C.L., and A.L., <br><br> Plaintiffs, <br><br><br> vs. <br><br><br> ANTHEM BLUE CROSS and NORTHRUP GRUMMAN HEALTH PLAN, <br><br> Defendants. | MEMORANDUM DECISION & ORDER <br><br><br><br><br><br> Case No. 2:18cv671 <br> Judge Dee Benson |

This matter is before the Court on Defendant Anthem Blue Cross's Motion for Judgment on the Pleadings and Partial Summary Judgment on Plaintiffs' Second Cause of Action (Dkt. 32), and Plaintiffs' Motion for Leave to File Amended Complaint (Dkt. 22). The motions have been fully briefed. The Court concludes that a hearing would not significantly aid its determination of the motions. Accordingly, the Court issues the following Memorandum Decision and Order based on the written submissions of the parties and the law and facts relevant to the pending motions. DUCivR 7-1(f).

1

## BACKGROUND

This is an ERISA case.[1] J.L. and C.L. are the parents of A.L. (collectively "Plaintiffs"), all of whom are beneficiaries of a group health plan that is sponsored and funded by Defendant Northrup Grumman. (Dkt. 2, Compl. ¶¶ 1-2.) Defendant Anthem Blue Cross is the third-party claims administrator for the Plan. (*Id.* ¶ 3.)

A.L. is a minor with a long history of mental health issues including but not limited to anxiety and depression. On May 13, 2016, A.L. was admitted to Sunrise, a residential treatment center for adolescent girls, located in Utah. A.L. was discharged from Sunrise on August 7, 2017. (*Id.* ¶¶ 23, 41.)

A.L.'s first 50 days at Sunrise (May 13, 2016 through July 1, 2016) were covered by the Plan, based on Defendant's decision that the first 50 days were medically necessary. (*Id.* ¶ 33; Dkt. 31-1 Exh. C, May 20, 2016 Letter from Anthem (stating that A.L's initial 10-day stay at Sunrise (from 05/13/16-05/23/16) was certified as "medically necessary"); Dkt. 31-1 Exh. D, Sept. 14, 2017 Letter from Anthem (approving 40 days of treatment at Sunrise stating: "It was determined that services from 5/23/16-07/01/16 were medically necessary.").) However, Defendant concluded that no benefits should be paid for A.L.'s stay at Sunrise after July 1, 2016, because Defendant determined it was not medically necessary under the terms of the Plan and applicable residential treatment center criteria. (Dkt. 2, Compl., ¶ 39; Dkt. 31-1 Exh. D.)

Plaintiffs appealed the denial of coverage and exhausted the administrative appeals

---

[1]The Employee Retirement Income Security Act of 1974 (ERISA) is a federal law that sets minimum standards for most voluntarily established retirement and health plans in private industry to provide protection for individuals in these plans. *See* 29 U.S.C. § 1001 *et seq.*

process. (*Id.* ¶ 42.)

On August 28, 2018, Plaintiffs filed the Complaint in this case, seeking to recover benefits for A.L.'s stay at Sunrise from July 2, 2016 through August 7, 2017. Plaintiffs' Complaint sets forth two causes of action: (1) a claim for benefits pursuant to ERISA under 29 U.S.C. 1132(a)(1)(B); and (2) a claim alleging violation of the Mental Health Parity and Addiction Equity Act of 2008 (MHPAEA) under 29 U.S.C. § 1185a(a)(3)(A)(ii).

Both parties have motions pending before the Court. Defendant seeks summary judgment on Plaintiffs' Second Cause of Action – the MHPAEA claim. (Dkt. 32.) Plaintiffs seek leave to file an Amended Complaint. (Dkt. 22.)[2]

## DISCUSSION

1. **Defendant's Motion for Summary Judgment on Plaintiffs' Second Cause of Action Alleging Violation of the Mental Health Parity and Addiction Equality Act**

Defendant asks this Court to grant summary judgment on Plaintiffs' Second Cause of Action which is based on the Mental Health Parity and Addiction Equality Act. The MHPAEA "prohibits the imposition of more stringent treatment limitations for mental health treatment than for medical treatment." *Bushnell v. UnitedHealth Group, Inc.*, 2018 WL 1578167, *4 (S.D.N.Y. Mar. 27, 2018). The Act requires that if a health plan provides "both medical and surgical benefits and mental health or substance abuse disorder benefits," then the plan must ensure that (1) "the treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all

---

[2] Defendant Northrup Grumman Health Plan joins Defendant Anthem Blue Cross in Anthem's opposition to Plaintiffs' motion for leave to file an amended complaint. (Dkt. 33.)

medical and surgical benefits covered by the plan (or coverage)"; and (2) "there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits." 29 U.S.C. § 1185a(a)(3)(A)(ii).

Treatment limitations under the MHPAEA can be quantitative or nonquantitative. 29 C.F.R. § 2590.7212(a). Quantitative limitations include, for example, a limitation on the number of outpatient visits that an insurance plan will cover. *Id.* Nonquantitative limitations include "restrictions based on geographic locations, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for services provided under the plan or coverage." *Id.* § 2590.712(c)(4)(ii)(H).

With regard to nonquantitative limitations, the regulations provide:

> [a group health plan may not] impose a nonquantitative treatment limitation with respect to mental health or substance use disorder benefits in any classification, unless . . . any processes, strategies, evidentiary standards, or other factors used in applying the nonquantitative limitation . . . are comparable to, and are applied no more stringently than, the processes, strategies, evidentiary standards, or other factors used in applying the limitation with respect to medical/surgical benefits.

*Id.* § 2590.712(c)(4)(i).

A person claiming a violation of the MHPAEA may allege an impermissible mental-health exclusion or limitation based on the *express terms* of the plan (a "facial" challenge) or based on the plan administrator's *application* of the plan ("as-applied" challenge). *See Anne M. v. United Behavioral Health,* Case No. 2:18-CV-808-TS, Slip Copy, 2019 WL 1989644, *2 (D. Utah May 6, 2019) (emphasis added).

In this case, Plaintiffs assert that Defendant violated the MHPAEA through the "unprincipled *application* of the Plan terms that do not, on their face, violate the MHPAEA's

4

parity requirements." (Dkt. 37, Pls.' Opp'n at 11.)[3] Although acknowledging that Defendant covered A.L.'s first 50 days at Sunrise, Plaintiffs claim that the remainder of A.L.'s stay at Sunrise was denied due to Defendant's "*more restrictive application* of the Plan's clinical criteria" in handling mental health benefits versus medical or surgical benefits. (*Id.* at 12.)

The Second Cause of Action in the Complaint contains Plaintiffs' MHPAEA claim. Paragraphs 53 and 54 set forth the manner in which Plaintiffs believe Defendant violated the MHPAEA. They state as follows:

> 53. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for [A.L.'s] treatment at Sunrise include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities. For none of these types of treatment does Anthem exclude coverage for medically necessary care of medical/surgical conditions based on geographic location, facility type, provider specialty, or other criteria in

---

[3] Plaintiffs appear to concede, albeit indirectly, that the Plan in this case does not, *on its face*, violate the MHPAEA. (*See* Dkt. 37, Pls.' Reply at 10-12 (clarifying that "[Plaintiffs] have identified a specific limitation in the Plan *as applied* by Anthem ...."); *see also* Dkt. 22-A, Pls' Proposed Am. Compl. ¶ 53 (adding the words "*or restrict*" and "*medical necessity*" to Proposed Amended Complaint in order to expressly and more clearly allege that Defendant does not "exclude *or restrict* coverage for medically necessary care of medical/surgical conditions based on *medical necessity*, geographic location, facility type, provider specialty, or other criteria in the manner Anthem excluded coverage of treatment for [Plaintiff]").) However, in the event that Plaintiffs do not so concede, and to the extent Plaintiffs' Complaint can be read to allege a facial violation, the Court finds, as a matter of law, that the Plan in this case does not categorically or on its face exclude coverage for residential treatment centers.

Under the Plan, residential treatment centers are a covered benefit so long as the treatment is medically necessary. Similarly, under the Plan, skilled nursing facilities (the analogous type of care for medical and surgical conditions) are a covered benefit so long as the treatment is medically necessary. In other words, the "medically necessary" determination, which is the only express limitation on benefits for mental health treatment at a residential treatment center, also applies to the analogous type of care for medical and surgical conditions. Thus, the Plan does not, on its face, exclude residential treatment centers from coverage, and in fact the Plan covered A.L's stay at a residential treatment center, finding it medically necessary, from May 13, 2016 through July 1, 2016. (Dkt. 2 at ¶ 39.)

5

> the manner Anthem excluded coverage of treatment for [A.L.].
>
> 54. In addition, the Defendants violate 29 C.F.R. § 2590.712( c)(4) ( i ) because the terms of the Plan and the criteria used by the Plan and Anthem, as written or in operation, use processes, strategies, standards or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

(Dkt. 2, Compl. ¶¶ 53-54.)

Paragraphs 53 and 54 of the Complaint essentially recite the legal standards set forth in the regulations governing the MHPAEA. *See, e.g.,* 29 C.F.R. 2590.712(c)(4)(I); 29 C.F.R. § 2590.712(c)(4)(ii)(H). Although Plaintiffs state, in general terms, that Defendants violated the MHPAEA by doing the things that the regulations prohibit, Plaintiffs do not identify what "processes, strategies, standards, or other factors" were applied more stringently in Defendant's handling of mental health claims versus medical or surgical claims. Additionally, Plaintiffs do not provide any facts to show or even suggest that a particular process or standard, including the "medically necessary" standard, was applied in a differential way. Plaintiffs have simply failed to provide any facts to support their claim that there was disparate treatment in the way Defendant's handled A.L.'s claim for continued treatment at Sunrise compared to the way Defendant processes, or evaluates claims for prolonged treatment at skilled nursing facilities and inpatient rehabilitation centers.[4]

---

[4] Plaintiffs' allegations that Defendant made errors and procedural mistakes in evaluating A.L.'s entitlement to benefits for continued treatment at Sunrise are precisely the type of claims addressed and remedied via Plaintiffs' First Cause of Action – claim for recovery of benefits under 29 U.S.C. § 1132(a)(1)(B). For example, in this regard, Plaintiffs allege: (1) Defendant failed to provide coverage for A.L.'s medically necessary treatment in accord with the terms of the Plan and the requisite medical necessity criteria in determining the duration of A.L.'s stay at

This Court and others have dismissed MHPAEA claims based on similarly vague and conclusory allegations. *See, e.g.*, *Anne M. v. United Behavior Health*, Slip Copy, 2019 WL 1989644 (D. Utah May 6, 2019) (dismissing plaintiffs' MHPAEA claim after finding Plaintiffs allegations that the plan applied medical necessity criteria for mental health disorders more stringently than medical necessity criteria for medical disorders were "merely conclusory allegations devoid of any factual support"); *H.H. v. Aetna Ins. Co.*, 342 F. Supp.3d 1311, 1320-21 (S.D. Fla. 2018) (finding that Plaintiffs' allegations – that the standards for assessing services at a residential treatment center were different than those used to assess services at a skilled nursing facility – were "conclusory and unsupported," and although Plaintiffs "need not have proof of the specific processes that Aetna allegedly uses to deny coverage to residential treatment facilities, Plaintiffs must still include some factual allegations to lend support to their claims").

Most recently, in *Kerry W. v. Anthem Blue Cross and Blue Shield*, Slip Copy, 2019 WL 2393802 (June 6, 2019 D. Utah), this Court considered and dismissed an MHPAEA claim based on allegations nearly identical to Plaintiffs' MHPAEA claim in this case. And, in accord with the Court's findings in *Kerry W.*, the Court likewise finds in this case that Plaintiffs' MHPAEA claim is vague, conclusory, and "fails to provide a sufficient factual basis to support their claim

---

Sunrise (Complaint ¶¶ 33-37, 47); (2) Defendant failed to refer to specific parts of the medical record in issuing its denial of benefits (Compl. ¶ 38); and Defendant failed to provide adequate explanations for its denial of benefits and continued denials during the appeals process (Compl. ¶¶ 39-40, 48). However, these same allegations are inadequate to support a cause of action claiming an MPHAEA violation unless Plaintiffs identify a treatment limitation and make some *comparison* to Anthem's decision-making in the context of a medical/surgical claim for inpatient rehabilitation or a skilled nursing facility. Plaintiffs in this case have failed to make such a comparison.

that there was disparate treatment in the way Defendant handled, processed, or evaluated [A.L.'s] claim for treatment at [Sunrise] in comparison to the way Defendant handles, processes, or evaluates claims for treatment at skilled nursing facilities and inpatient rehabilitation facilities." *Id.* at *5.

Having concluded that Plaintiffs' MHPAEA claim is insufficient as a matter of law, Defendant's motion for partial summary judgment seeking the dismissal of Plaintiffs' Second Cause of Action pursuant to the MHPAEA is GRANTED.

### 2. Plaintiffs' Motion for Leave to File Amended Complaint

Plaintiffs' Motion for Leave to File Amended Complaint was filed on February 8, 2019, two days after the deadline set forth by the Court in the Scheduling Order. (Dkts. 11, 30 & 43.) "Amendments to pleadings after the deadline for amending pleadings set in a scheduling order are governed by Federal Rules of Civil Procedure 15(a) and 16(b)(4)." *McQueen v. Aramark Corp.*, 2016 WL 3079712, *1 (May 31, 2016 D. Utah).

Rule 15(a) provides that, outside of amending as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a). The grant of leave to amend pursuant to Rule 15(a) is "within the discretion of the trial court." *McQueen*, 2016 WL 3079712, *1. However, a court may properly deny leave for various reasons, including undue delay or futility of amendment. *Id.* "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Jefferson City School Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999).

Rule 16 provides that the schedule outlined in a court-issued scheduling order "may be modified only for good cause and with the judge's consent." Fed.R.Civ.P. 16(b)(4). "Rule 16(b)(4) requires a heightened standard in comparison to Rule 15(a)." *Roberts v. C.R. England, Inc.*, 2013 WL 5275942, at *3 (D. Utah Sept. 18, 2013).

> To establish good cause under Rule 16(b)(4), the moving party must show that the amendment deadline could not have been met even if it had acted with due diligence. Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Furthermore, the lack of prejudice to the nonmovant does not show 'good cause.'

*McQueen*, 2016 WL 3079712, *2 (citing *Carefusion 213, LLC v. Professional Disposables, Inc.*, 2010 WL 4004874, at *3-4 (D. Kan. Oct. 12, 2010)).

When a motion to amend is filed beyond the scheduling order deadline, as Plaintiffs did in this case, the Court "will first determine whether the moving party has established 'good cause' within the meaning of Rule 16(b)(4) so as to justify allowing the untimely motion. Only after determining that good cause has been established will the Court proceed to determine if the more liberal Rule 15(a) standard for amendment has been satisfied." *Id.* (citing *Carefusion 213*, 2010 WL 4004874, at *3-4).

Starting with the good-cause standard under Rule 16, the Court finds that Plaintiffs have failed to show good cause. Since the filing of the original Complaint in August 2018, Plaintiffs have learned no new facts that would justify the untimely proposed additions. Plaintiffs' Proposed Amended Complaint adds only a few key words to the MHPAEA cause of action[5] and

---

[5] Paragraph 53 of Plaintiffs' Proposed Amended Complaint adds the words "or restrict" and "medical necessity" in order to expressly and more clearly allege that Defendant does not "exclude *or restrict* coverage for medically necessary care of medical/surgical conditions based on *medical necessity*, geographic location, facility type, provider speciality, or other criteria in

includes a redrafting of the equitable remedies provided by the MHPAEA. (Dkt. 22-1.) Additionally, Plaintiffs have failed to provide any reason for the untimeliness, stating only that "counsel is unsure why the deadline was missed." (Dkt. 37 at 19.) Athough the Court appreciates counsel's candor, the Court finds that neither counsel's candor nor counsel's claim that Defendants failed to show any prejudice resulting from the proposed amendment amounts to a showing of "good cause." *McQueen*, 2016 WL 3079712, *2

Even if the Court were to find that Plaintiffs' had shown good cause, the Court concludes that the amendment is futile under Rule 15(a). In granting Defendant's motion on the MHPAEA claim, the Court effectively construed Plaintiffs' claim in a manner consistent with the Proposed Amended Complaint. In other words, even incorporating the additional language of the Amended Complaint, the MHPAEA claim remains plagued by the same defects as the original: It contains vague and conclusory allegations devoid of any factual support. *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) ("A proposed amendment is futile if the complaint, as amended, would be subject to dismissal.").

Accordingly, the Court Plaintiffs' Motion to Amend is DENIED.

## CONCLUSION

Defendant's Motion for Partial Summary Judgment on Plaintiffs' Second Cause of Action (Dkt. 32) is GRANTED. Plaintiffs' Motion for Leave to Amend Complaint (Dkt. 22) is DENIED.

---

the manner Anthem excluded coverage of treatment for [Plaintiff]." (Dkt. 22-1, Proposed Amended Complaint, ¶ 53.)

DATED this 13th day of September, 2019.

_____
Dee Benson
United States District Judge