IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| J.L., C.L., and A.L.,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHEM BLUE CROSS and NORTHROP GRUMMAN HEALTH PLAN,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING [61] DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' [62] MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:18-cv-00671-DBB-DBP<br><br>District Judge David Barlow |

Defendant Anthem Blue Cross (Anthem) denied Plaintiffs' claims for healthcare reimbursement under an employee welfare benefits plan. Plaintiffs contend their claims were wrongly denied under the Employee Retirement Income Security Act of 1974 (ERISA).[1] Before the court are the parties' cross-motions for summary judgment.[2] Having considered the briefing and the relevant law, the court concludes the motions may be resolved without oral argument.[3] The court grants Defendants' Motion for Summary Judgment and denies Plaintiffs' Motion for Summary Judgment.

---

[1] *See generally* 29 U.S.C. § 1001, *et seq.*

[2] Plaintiffs' Motion for Summary Judgment (Plaintiffs' Motion), ECF No. 62, filed February 21, 2020; Defendants' Motion for Summary Judgment (Defendants' Motion), ECF No. 61, filed February 21, 2020.

[3] *See* DUCivR 7-1(f).

## BACKGROUND

A.L. and her parents receive health insurance coverage through the Northrup Grumman Health Plan (Plan), for which Anthem is the third-party claims administrator.[4] The parties agree that the Plan confers on Anthem the discretionary authority to construe and interpret the Plan.[5]

A.L. was admitted to Sunrise Residential Treatment Center, a licensed residential treatment center, on May 13, 2016.[6] She received residential mental health treatment at Sunrise until August 7, 2017.[7] Anthem initially determined that A.L.'s treatment at Sunrise from May 13, 2016 until May 23, 2016 was medically necessary and authorized coverage for those days.[8]

The Plan defines residential treatment as "[t]wenty-four (24) hours per day specialized treatment involving at least one physician visit per week in a facility-based setting."[9] The Plan provides that residential treatment would include certain group therapies, family therapy, individualized treatment, and that beneficiaries "will be prepared to receive the majority of their treatment in a community setting."[10]

Services "are considered medically necessary if the claims administrator determines that a medical practitioner, exercising prudent clinical judgment, would provide it to a covered individual for the purpose of preventing, evaluating, diagnosing or treating an illness, injury or

---

[4] Complaint, ¶¶ 1–3, ECF No. 2, filed August 28, 2018.

[5] Plaintiffs' Motion at 15; Defendants' Motion at 3; Anthem 2047, 2430. For ease of identification, the court refers to the Bates-numbered administrative record of Anthem's benefits decision as "Anthem" followed by the number.

[6] Anthem 39.

[7] Defendants' Motion at 2, 17. There appears to be some discrepancy on A.L.'s discharge date—August 7, 2017 or July 13, 2017. *See* Plaintiffs' Motion at 15 n.2; Defendants' Motion at 7.

[8] Anthem 1.

[9] *Id.* 2262.

[10] *Id.* 2261.

disease or its symptoms and that are . . . [i]n accordance with generally accepted standards of medical practice."[11] Generally accepted standards of medical practice are "standards that are based on credible scientific evidence published in peer-reviewed medical literature generally recognized by the relevant medical community, national physician specialty society recommendations and the views of medical practitioners practicing in relevant clinical areas and any other relevant factors."[12]

For residential treatment to qualify as medically necessary under the Plan, the treatment must meet certain criteria:

*Severity of Illness Criteria*

Residential treatment center is considered medically necessary when the member has all of the following:

A. The member is manifesting symptoms and behaviors which represent a deterioration from the member's usual status and include either self injurious or risk taking behaviors that risk serious harm and cannot be managed outside of a 24 hour structured setting or other appropriate outpatient setting; and

B. The social environment is characterized by temporary stressors or limitations that would undermine treatment that could potentially be improved with treatment while the member is in the residential facility; and

C. There should be a reasonable expectation that the illness, condition or level of functioning will be stabilized and improved and that a short term, subacute residential treatment service will have a likely benefit on the behaviors/symptoms that required this level of care, and that the member will be able to return to outpatient treatment; and

D. Member's clinical condition is of such severity that an evaluation by physician or other provider with prescriptive authority is indicated at admission and weekly thereafter.[13]

---

[11] *Id.* 2126.

[12] *Id.*

[13] *Id.* 2255.

The Plan then identifies certain "continued stay criteria":

> *Continued Stay Criteria*
>
> Residential treatment center is considered medically necessary when the member continues to meet Severity of Illness criteria and has A, and one of B, C, or D:
>
> A. Member evaluation by a physician or other provider with prescriptive authority occurs weekly; and
>
> B. Progress with the psychiatric symptoms and behaviors is documented and the member is cooperative with treatment and meeting treatment plan goals; or
>
> C. If progress is not occurring, then the treatment plan is being re-evaluated and amended with goals that are still achievable; or
>
> D. There is no access to partial hospital care if this is needed.[14]

The Plan provides that "[f]or continued authorization of the requested service, Continued Stay criteria must be met along with Severity of Illness criteria."[15] Although A.L.'s residential treatment was covered as medically necessary from May 13, 2016 until May 23, 2016, on August 1, 2016, Anthem informed Plaintiffs that it denied coverage for A.L.'s treatment after May 23, 2016 on the basis that residential treatment was not medically necessary.[16] Anthem provided the rationale from the medical reviewer:

> You went to residential treatment for your mental health condition and your stay was approved. A request was made to extend your stay. The plan's clinical criteria considers short-term residential treatment medically necessary for those who meet certain criteria and improvement can be expected from a short-term residential stay. The information we received after your stay was approved shows the program you're in is planned for 6 to 8 months. A program of this length is not considered short term residential treatment. For this reason the request for you to remain in this long-term residential treatment program is denied as not medically necessary. There may be other options to help you work through the issues you're dealing with, such as short-term residential treatment or outpatient

---

[14] Anthem 2255.

[15] *Id.* 2254.

[16] *Id.* 3–4.

services. We encourage you to discuss other treatment options with your doctor. It may help your doctor to know we reviewed this request using the plan clinical guideline called Psychiatric Disorder Treatment - Residential Treatment Center (RTC) CG-BEH-03.[17]

On January 13, 2017, Sunrise, on Plaintiffs' behalf, submitted a Level One appeal of the denial.[18] On February 23, 2017, Anthem denied the Level One appeal, explaining that "[a]fter the treatment you had, you were no longer at risk for serious harm that needed 24 hour care. You could have been treated with outpatient services. We based this decision on this health plan guideline (Psychiatric Disorder Treatment – Residential Treatment Center (RTC) (CG-BEH-03))."[19]

On August 17, 2017, Plaintiffs, on their own behalf, filed a Level Two appeal.[20] They provided additional information about A.L.'s prior treatment including a letter from one of A.L.'s mental health providers, who treated her from November 2005 to June 2009,[21] and a letter from another of A.L.'s mental health provider, who treated her from November 2015 to May 2016.[22]

On September 14, 2017, Anthem responded to Plaintiffs' Level Two appeal.[23] Anthem partially overturned its previous denial, and informed Plaintiffs that it would cover the additional

---

[17] *Id.* 4.

[18] *Id.* 32–34.

[19] *Id.* 579.

[20] Anthem 546–72.

[21] *Id.* 558–59.

[22] *Id.* 559–61.

[23] *Id.* 1838.

days of A.L.'s residential treatment from May 23, 2016 through July 1, 2016.[24] Anthem then

denied coverage for the remainder of A.L.'s time at Sunrise, providing,

> We still do not think this is medically necessary for you. We believe our first decision is correct for the following reason. After the treatment you had, you were no longer at risk for serious harm that needed 24 hour care. You could have been treated with outpatient services as of July 2, 2016. We based this decision on this health plan guideline (Psychiatric Disorder Treatment – Residential Treatment Center (RTC) (CG-BEH-03)). This review included the appeal request letter from your parents, 1040 pages of medical records submitted for the second level appeal review, 509 pages of records from your first level appeal review and 20 pages of medical records submitted during the initial review.[25]

Plaintiffs sued Anthem to recover benefits under ERISA and for violation of the

Mental Health Parity and Addiction Equality Act.[26] The court previously granted

Defendants' Partial Motion for Summary Judgment, dismissing Plaintiffs' second cause

of action.[27] The remaining issue before the court now is Plaintiffs' first cause of action to

recover benefits under ERISA.

## LEGAL STANDARD

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."[28]

"When both parties move for summary judgment in an ERISA case, thereby stipulating that a

trial is unnecessary, 'summary judgment is merely a vehicle for deciding the case; the factual

---

[24] *Id.* 1838.

[25] *Id.* 1838–42.

[26] Complaint at 10–12.

[27] Memorandum Decision and Order, ECF No. 48, filed September 13, 2019.

[28] Fed. R. Civ. P. 56(a).

determination of eligibility of benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor.'"[29]

## B. Review of Benefits Decision under ERISA

First, the court must determine the standard under which to review Anthem's decisions. The United States Supreme Court has observed that "the validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue."[30] Applying the law of trusts, the Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[31] "[I]f the plan gives the administrator discretionary authority, '[courts] employ a deferential standard of review, asking only whether the denial of benefits was arbitrary and capricious.'"[32] Under this deferential standard of review, the court "determin[es] whether the interpretation of the plan was reasonable and made in good faith."[33]

Here, the parties do not dispute that the Plan confers discretionary authority on Anthem to interpret the Plan and make benefits decisions.[34] Plaintiffs challenge Anthem's decision denying payment of benefits based upon its interpretation of the Plan.[35] However, interpretation of the

---

[29] *Michael D. v. Anthem Health Plans of Ky., Inc.*, 369 F. Supp. 3d 1159, 1167 (D. Utah 2019) (quoting *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010)).

[30] *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

[31] *Id.*

[32] *Hodges v. Life Ins. Co. of N. Am.*, 920 F.3d 669, 675 (10th Cir. 2019) (quoting *LaAsmar*, 605 F.3d 789 at 796).

[33] *Id.*

[34] Plaintiffs' Motion at 15; Defendants' Motion at 6.

[35] Plaintiffs' Motion at 20.

Plan is precisely within Anthem's conferred discretion.[36] Accordingly, the presumptive standard of review is the arbitrary and capricious standard.

Plaintiffs argue that Anthem forfeited the more deferential standard of review through its procedural irregularities and failure to interpret and apply the Plan's terms reasonably.[37] Defendants counter that the "longstanding 'substantial compliance' doctrine" is Tenth Circuit precedent and that "any perceived 'procedural irregularity' does not warrant heightened scrutiny."[38]

Employee benefit plans must "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant."[39] These plans also must "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."[40] To ensure this full and fair review process occurs, the Department of Labor has developed certain procedural requirements.[41] The plan's claim procedures must "contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where

---

[36] Anthem 2047, 2054.

[37] Plaintiffs' Motion at 20.

[38] Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment at 14, ECF No. 67, filed April 10, 2020.

[39] 29 U.S.C. § 1133(1). This section is the codified Section 503 of ERISA. The relevant implementing regulations are codified at 29 C.F.R. § 2560.503-1.

[40] 29 U.S.C. § 1133(2).

[41] *See generally* 29 C.F.R. § 2560.503-1 (implementing ERISA Section 503); *see also id.* § 2590.715-2719(b) (implementing "[o]ther consumer protection provisions, including other protections provided by the Affordable Care Act and the Mental Health Parity and Addiction Equity Act" as stated in 29 C.F.R. § 2590.701-1(b)).

appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants."[42] Regulatory subsection 2560.503-1(*l*) provides,

> in the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of [ERISA] on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.[43]

This subsection says nothing about the applicable judicial standard of review. However, the Department of Labor has asserted that the deemed-exhausted provision in this subsection "clarif[ies] that the procedural minimums of the regulation are essential to procedural fairness and that a decision made in the absence of the mandated procedural protections *should not be entitled to any judicial deference*."[44]

In *Halo v. Yale Health Plan, Director of Benefits and Records Yale University*,[45] the Second Circuit found that "under certain circumstances, a plan administrator's failure to comply with the letter of the claims procedures outlined in ERISA requires courts to eschew the more deferential arbitrary and capricious review normally applied to an administrator's discretionary decisions in favor of a more searching de novo review."[46] Finding 29 C.F.R. § 2560.503-1(*l*) ambiguous with respect to the applicable judicial standard of review, the Second Circuit deferred

---

[42] 29 C.F.R. § 2560.503-1(b)(5).

[43] *Id.* § 2560.503-1(*l*). In a similar regulation under the Patient Protection and Affordable Care Act, the Department of Labor has more specifically stated that where a plan fails to provide required procedural protections, the participant's "claim or appeal is deemed denied on review without the exercise of discretion by an appropriate fiduciary." *Id.* § 2590.715-2719(b)(2)(ii)(F)(1).

[44] EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974; RULES AND REGULATIONS FOR ADMINISTRATION AND ENFORCEMENT; CLAIMS PROCEDURE, 65 FR 70246-01 at 70255 (emphasis added).

[45] 819 F.3d 42 (2d Cir. 2016).

[46] *Id.* at 47 (citation and internal quotation marks omitted).

to the Department of Labor's interpretation that the deemed-exhausted provision intended to eliminate deferential judicial review.[47] The Second Circuit held,

> when denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503–1, will result in that claim being reviewed de novo in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent *and* harmless.[48]

Plaintiffs request that the court adopt the *Halo* approach. But 29 C.F.R. § 2560.503-1(*l*) is not ambiguous, and so the court cannot adopt the Second Circuit's analysis. "A regulation is ambiguous if it is reasonably susceptible to more than one interpretation or capable of being understood in two or more possible senses or ways."[49] The court begins by "examining the plain language of the text, giving each word its ordinary and customary meaning."[50] "If, after engaging in this textual analysis, the meaning of the regulations is clear, [the court's] analysis is at an end[.]"[51]

Subsection 2560.503-1(*l*)(1) permits a civil action when a plan fails to use a reasonable claims procedure, but it says nothing about the judicial standard of review for that subsequent proceeding.[52] This subsection only authorizes a "route to judicial review" that administrative exhaustion requirements would otherwise preclude.[53] Because it does not address the applicable

---

[47] *Id.* at 53 (quoting 65 Fed. Reg. 70246-01, 70,255).

[48] *Id.* at 60–61.

[49] *Jake's Fireworks Inc. v. Acosta*, 893 F.3d 1248, 1261 (10th Cir. 2018) (citation and internal quotation marks omitted).

[50] *Mitchell v. Comm'r*, 775 F.3d 1243, 1249 (10th Cir. 2015).

[51] *Id.*

[52] 29 C.F.R. § 2560.503-1(*l*)(1).

[53] *Joel S. v. Cigna*, 356 F. Supp. 3d 1305, 1312 (D. Utah 2018)*, appeal dismissed* (Mar. 28, 2019).

standard of review, its language cannot be susceptible to more than one interpretation on this point. Thus, the court declines to adopt the *Halo* approach.

However, under certain circumstances, the standard of review can be heightened to de novo despite a plan administrator's discretionary authority. This can occur if: the administrator fails to exercise discretion within the required timeframe or fails to apply its expertise to a particular decision;[54] the case involves "serious procedural irregularities"[55] or "procedural irregularities in the administrative review process";[56] or the plan members lack notice of the administrator's discretionary authority.[57] Nevertheless, "in the context of an ongoing, good faith exchange of information between the administrator and the claimant, inconsequential violations of the deadlines or other procedural irregularities would not entitle the claimant to de novo review."[58] Although the Tenth Circuit has questioned the continued viability of this exception in light of regulatory changes,[59] it remains precedent to not "apply 'a hair-trigger rule' requiring de novo review whenever the plan administrator, vested with discretion, failed *in any respect* to

---

[54] *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 631–32 (10th Cir. 2003).

[55] *Martinez v. Plumbers & Pipefitters Nat. Pension Plan*, 795 F.3d 1211, 1215 (10th Cir. 2015).

[56] *LaAsmar*, 605 F.3d at 797; *Mary D. v. Anthem Blue Cross Blue Shield*, 778 F. App'x 580, 588 (10th Cir. 2019) (unpublished).

[57] *Lyn M. v. Premera Blue Cross*, 966 F.3d 1061, 1065 (10th Cir. 2020).

[58] *Rasenack ex rel. Tribolet v. AIG Life Ins. Co.*, 585 F.3d 1311, 1317 (10th Cir. 2009) (citing *Gilbertson*, 328 F.3d at 634).

[59] *Kellogg v. Metro. Life Ins. Co.*, 549 F.3d 818, 828 (10th Cir. 2008) ("In January 2002, amendments to the regulations took effect that have called into question the continuing validity of the substantial compliance rule."); *see also Halo*, 819 F.3d at 56 ("Whatever the merits of applying the substantial compliance doctrine under the 1977 claims-procedure regulation, we conclude that the doctrine is flatly inconsistent with the 2000 regulation."). In its 2000 implementation, the Department of Labor explicitly rejected the suggestions that it implement a "standard of good faith compliance as the measure for requiring administrative exhaustion," and it rejected the suggestion that it "recognize the judicial doctrine under which exhaustion is required unless the administrative processes impose actual harm on the claimant." EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974; RULES AND REGULATIONS FOR ADMINISTRATION AND ENFORCEMENT; CLAIMS PROCEDURE, 65 FR 70246-01 at 70255–56.

comply with the procedures mandated by this regulation."[60] So, bound by this precedent, the court examines whether Anthem substantially complied with ERISA's procedural requirements.

Plaintiffs argue that Anthem failed to substantially comply with ERISA's procedural requirements because Anthem provided a conclusory denial—"[A.L. was] no longer at risk for serious harm that needed 24 hour care"—without providing any analysis as to how it made this determination.[61] Plaintiffs also argue that one of the medical reviewers specialized in forensic and geriatric psychiatry, rather than child and adolescent psychiatry, thus violating the requirement that "the appropriate named fiduciary shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment."[62] Next Plaintiffs argue that Anthem did not take into account A.L.'s entire medical record or the letters submitted by her previous providers, and that Anthem provided no support for July 1, 2016 being the final day of coverage.[63] Finally, Plaintiffs argue that Anthem was operating under a conflict of interest because it was retained by the employer to administer a self-funded ERISA plan, and so the court should decrease the deference given on review.[64]

The federal regulations require Anthem to provide Plaintiffs with:

(i) The specific reason or reasons for the adverse determination;

(ii) Reference to the specific plan provision on which the determination is based;

---

[60] *LaAsmar*, 605 F.3d at 799.

[61] Plaintiffs' Motion at 22–23.

[62] *Id.* at 23 (quoting 29 C.F.R. 2560.503-1(h)(3)(iii)).

[63] *Id.* at 24–25.

[64] *Id.* at 25–27.

(iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

. . .

(v)(B) If the adverse determination is based on a medical necessity or experimental treatment or similar exclusion or limit, either an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances, or a statement that such explanation will be provided free of charge upon request.[65]

Anthem substantially complied with ERISA's procedural requirements. The initial denial letter, the Level One denial letter, and the Level Two denial letter all state the specific reason for the denial and refer to the plan provision on which the denial was based.[66] Further, both appeals letters provide an explanation or clinical judgment behind the lack of medical necessity determination.[67] The August 1, 2016 denial letter states that "the service does not meet the criteria for 'medical necessity' under your description of benefits."[68] The letter goes on to provide rationale from the medical reviewer that the program in which A.L. was enrolled was not considered "short term residential treatment" based on its length and so A.L.'s request "to remain in this long-term residential treatment program [was] denied as not medically necessary."[69] The letter provides that the reviewer used the Plan's clinical guideline "Psychiatric Disorder Treatment – Residential Treatment Center (RTC) CG-BEH-03."[70] The February 23, 2017 denial letter states that the services were "considered not medically necessary" because after A.L.'s

---

[65] 29 C.F.R. § 2560.503-1(g)(1).

[66] Anthem 3–4, 579, 1838–39.

[67] Id. 579, 1838–39.

[68] Id. 3.

[69] Id. 4.

[70] Id.

treatment she was "no longer at risk for serious harm that needed 24 hour care."[71] The letter

notes that the decision was based on "Psychiatric Disorder Treatment – Residential Treatment

Center (RTC) CG-BEH-03."[72] The September 14, 2017 letter again references "Psychiatric

Disorder Treatment – Residential Treatment Center (RTC) CG-BEH-03" and, although Anthem

approved A.L.'s treatment through July 1, 2016, it ultimately denied coverage for the remainder

of her treatment for lack of medical necessity because after A.L.'s treatment she was "no longer

at risk for serious harm that needed 24 hour care."[73]

     Anthem also substantially complied with the requirement that "the appropriate named

fiduciary shall consult with a health care professional who has appropriate training and

experience in the field of medicine involved in the medical judgment."[74] Two of the three

reviewing physicians specialized in child and adolescent psychiatry, and the third reviewing

physician specialized in psychiatry.[75] Plaintiffs argue that all of the reviewing psychiatrists

should have been child and adolescent specialists, but make no showing that this was insufficient

under 29 C.F.R. 2450.503-1(h)(3)(iii).

     Plaintiffs' argument that Anthem failed to consider all of A.L.'s medical records and

letters from previous providers is without merit. In the September 14, 2017 denial letter Anthem

indicates that the review "included the appeal request letter from [A.L.'s] parents, 1040 pages of

medical records submitted for the second level appeal review, 509 pages of records from [A.L.'s]

---

[71] *Id.* 579.

[72] Anthem 579.

[73] *Id.* 1838–39.

[74] 29 C.F.R. 2560.503-1(h)(3)(iii).

[75] Anthem 1840. Plaintiffs note that based on Dr. Naimark's curriculum vitae it appears that he specializes in forensic and geriatric psychiatry. Plaintiffs' Motion at 23 (citing Anthem 3286–99).

first level appeal review and 20 pages of medical records submitted during the initial review."[76] The administrative record contains this information,[77] and Plaintiffs have provided no basis for their assertion that the records were not reviewed.

Finally, Plaintiffs' contention that Anthem operated under a conflict of interest is not supported. Before applying the sliding scale of deference based on conflict of interest, "there must first be evidence of a conflict of interest, i.e. proof 'that the plan administrator's dual role jeopardized his impartiality.'"[78] Aside from noting Anthem's role as plan administrator and fiduciary for the plan beneficiaries, Plaintiffs have failed to identify any evidence to suggest that Anthem's impartiality was compromised. Plaintiffs' allegations that Anthem cut procedural corners are not substantiated by the record evidence.

In sum, the Plan confers on Anthem the discretion to interpret the Plan and make benefits decisions in accordance with the Plan. Thus, the court presumptively applies the arbitrary and capricious standard of review. The plain language of ERISA's implementing regulations does not dictate a less deferential standard. Moreover, Plaintiffs have not shown serious procedural irregularities that would require a less deferential standard. Accordingly, the court reviews the benefits determination under the arbitrary and capricious standard of review and "is limited to determining whether the interpretation of the plan was reasonable and made in good faith."[79]

---

[76] Anthem 1839.

[77] *See id.* 860, 862–63, 868–93, 902–1536, 1539–1603.

[78] *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1097 (10th Cir. 1999).

[79] *LaAsmar*, 605 F.3d at 796 (citation and internal quotation marks omitted).

## DISCUSSION

"Under arbitrary and capricious review, this court upholds [the administrator's] determination so long as it was made on a reasoned basis and supported by substantial evidence."[80] The Tenth Circuit defines substantial evidence as "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decision-maker. Substantial evidence requires more than a scintilla but less than a preponderance."[81]

### A. Anthem's Denial of Coverage Was Not Arbitrary and Capricious.

*1. The Residential Treatment Criteria Are Not Incompatible with the Plan.*

Anthem denied coverage for A.L.'s residential treatment from July 2, 2016 to August 7, 2017 based on its determination that the treatment was not medically necessary.[82] Plaintiffs argue that in doing so Anthem relied on criteria that are mutually exclusive and incompatible with the Plan,[83] and they also argue that the Plan's definition of residential treatment conflicts with the criteria for determining eligibility for residential treatment.[84]

The Anthem criteria for residential treatment contain two sets of requirements:

*Severity of Illness Criteria*

Residential treatment center is considered medically necessary when the member has all of the following:

A. The member is manifesting symptoms and behaviors which represent a deterioration from the member's usual status and include either self injurious or

---

[80] *Van Steen v. Life Ins. Co. of N. Am.*, 878 F.3d 994, 997 (10th Cir. 2018).

[81] *Graham v. Hartford Life & Acc. Ins. Co.*, 589 F.3d 1345, 1358 (10th Cir. 2009) (quoting *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 382 (10th Cir. 1992)).

[82] Anthem 3–4, 579, 1838–39.

[83] Plaintiffs' Motion at 28–29.

[84] *Id.* at 29–31.

risk taking behaviors that risk serious harm and cannot be managed outside of a 24 hour structured setting or other appropriate outpatient setting; and

B. The social environment is characterized by temporary stressors or limitations that would undermine treatment that could potentially be improved with treatment while the member is in the residential facility; and

C. There should be a reasonable expectation that the illness, condition or level of functioning will be stabilized and improved and that a short term, subacute residential treatment service will have a likely benefit on the behaviors/symptoms that required this level of care, and that the member will be able to return to outpatient treatment; and

D. Member's clinical condition is of such severity that an evaluation by physician or other provider with prescriptive authority is indicated at admission and weekly thereafter.[85]

*Continued Stay Criteria*

Residential treatment center is considered medically necessary when the member continues to meet Severity of Illness criteria and has A, and one of B, C, or D:

A. Member evaluation by a physician or other provider with prescriptive authority occurs weekly; and

B. Progress with the psychiatric symptoms and behaviors is documented and the member is cooperative with treatment and meeting treatment plan goals; or

C. If progress is not occurring, then the treatment plan is being re-evaluated and amended with goals that are still achievable; or

D. There is no access to partial hospital care if this is needed.[86]

The Plan provides that "[f]or continued authorization of the requested service, Continued Stay criteria must be met along with Severity of Illness criteria.[87] Plaintiffs' contention that the criteria are mutually exclusive and incompatible is without merit. Plaintiffs focus their argument

---

[85] Anthem 2255.

[86] *Id.*

[87] *Id.* 2254.

on the "progress" aspect of the Continued Stay Criteria, averring that progress is incompatible with a risk of harm that cannot be managed outside of a 24-hour structured setting.[88] However, it is plausible that a patient could require 24-hour structured care and still make progress within that setting. The Plan does not quantify or qualify progress. Moreover, the three final requirements of the Continued Stay Criteria are disjunctive—indeed, criterion C provides for situations in which progress is not occurring.

The Plan defines residential treatment as "[t]wenty-four (24) hours per day specialized treatment involving at least one physician visit per week in a facility-based setting."[89] The Plan provides that residential treatment would include certain group therapies, family therapy, individualized treatment, and that beneficiaries "will be prepared to receive the majority of their treatment in a community setting."[90] Here, it unclear on what Plaintiffs base their contentions that the Plan's definition of residential treatment conflicts with the Continued Stay Criteria. For example, there is no support provided for the contention that "someone who is at risk for serious harm to self or others and requires 24-hour care certainly cannot be treated in group therapy and in a community setting."[91] Anthem's interpretation of the Plan's criteria for residential treatment is reasonable and not incompatible with the Plan.

*2. Plaintiffs Have Not Shown that Anthem Disregarded Record Evidence.*

Plaintiffs also argue that Anthem did not consider the recommendations from A.L.'s treating providers about the need for residential treatment, instead relying on the inconsistent

---

[88] Plaintiffs' Motion at 28.

[89] Anthem 2262.

[90] *Id.* 2261.

[91] Plaintiffs' Motion at 30.

views of its reviewing physicians.[92] However, Plaintiffs have not demonstrated that Anthem did "turn a blind eye" to these letters.[93] The letters are included in the administrative record[94] and, importantly, they do not comment on the date range for which coverage is in question.[95] The letter from Ms. Kelly indicates that she last treated A.L. in 2009.[96] And the letter from Dr. Wong discusses A.L.'s treatment from November 2015 through May 2016—prior to A.L.'s admission to Sunrise.[97]

Here, three board-certified psychiatrists, two specializing in child and adolescent psychiatry, reviewed the residential treatment criteria and all three determined that after a certain date residential treatment was not medically necessary for A.L.[98] Despite a difference in the date on which the reviewing physicians thought residential treatment was no longer necessary, the outcome is consistent—none of the three found residential treatment to be medically necessary after July 1, 2016.[99] Plaintiffs' argument that Anthem failed to consider the letters from A.L.'s treating providers and instead relied on the inconsistent views of its reviewing physicians is unsupported.

---

[92] Plaintiffs' Opposition to Defendants' Motion for Summary Judgment (Plaintiffs' Opposition) at 12–13, ECF No. 68, filed April 10, 2020.

[93] *Id.* at 13.

[94] Anthem 860, 862–63.

[95] *Id.*

[96] *Id.* 860.

[97] *Id.* 862–63.

[98] *Id.* 3–4, 579, 1838–39.

[99] *See id.*

### 3. Anthem's Denial of Coverage After July 1, 2016 Was Not Arbitrary and Capricious.

Plaintiffs contend that Anthem arbitrarily chose July 1, 2016 as the final date of coverage for A.L.[100] However, the administrative record indicates that A.L. was "taken off of safety" precautions on July 1, 2016.[101] Significantly, the final reviewer determined A.L.'s treatment was medically necessary from May 23, 2016 (which was the previous cutoff) through July 1, 2016 (the day the safety precautions were lifted).[102] Plaintiffs have not demonstrated that Anthem's medical reviewers did not take the administrative record into consideration.[103] The reviewing physicians' determinations reflect that they considered the administrative record before them.[104] And the record contains "more than a scintilla" of evidence to support Anthem's denial of benefits based on lack of medical necessity.

Plaintiffs also note that both before and after July 1, 2016, A.L. continued to struggle in various ways.[105] But the question before the court is not whether A.L. was symptom free or no longer required any treatment at all. Rather, the question is whether Anthem's medical necessity decision was "made on a reasoned basis and supported by substantial evidence."[106] As noted

---

[100] Plaintiffs' Motion at 37–39.

[101] Anthem 412–13.

[102] *Id.* 1838.

[103] *Id.* 3–4, 579, 1838–39.

[104] *See id.* 4, 579, 1839.

[105] Plaintiffs' Opposition at 12–13.

[106] *Van Steen v. Life Ins. Co. of N. Am.*, 878 F.3d 994, 997 (10th Cir. 2018).

previously, three qualified specialists reviewed A.L.'s records and determined that a form of treatment other than residential treatment would be appropriate for A.L.[107]

Thus, there is substantial record evidence that A.L.'s residential treatment after July 1, 2016 was not medically necessary. Anthem's denial of benefits after July 1, 2016 was not arbitrary and capricious.

## ORDER

For the reasons stated in this Memorandum Decision and Order:

1. Defendants' Motion for Summary Judgment is GRANTED;

2. Plaintiffs' Motion for Summary Judgment is DENIED.

3. Defendants' decisions denying Plaintiffs benefits for services at Sunrise Academy after July 1, 2016 are AFFIRMED.

Signed December 30, 2020.

BY THE COURT

David Barlow
United States District Judge

---

[107] Anthem 4 ("There may be other options to help you work through the issues you're dealing with, such as short-term residential treatment or outpatient services."); *id.* 579 ("You could have been treated with outpatient services."); *id.* 1839 ("You could have been treated with outpatient services as of July 2, 2016.").